UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-20547-GAYLES/TORRES

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**LAZARO PRAT**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Lazaro Prat's Motion to Dismiss Plaintiff's Complaint (the "Motion") [ECF No. 9]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the following reasons, the Motion is denied.

## BACKGROUND[1]

**I.    Factual Allegations**

On February 9, 2021, the Government commenced this lawsuit seeking to revoke Defendant's naturalized United States citizenship, pursuant to 8 U.S.C. § 1451(a). [ECF No. 1]. On April 29, 2002, Defendant filed an Application for Naturalization (the "Naturalization Application"), Form N-400. Question 15 of Part 10.D of the Naturalization Application ("Question

---

[1] As the Court proceeds on a motion to dismiss, it accepts the Government's allegations in the Complaint to Revoke Naturalization as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Moreover, the Court may properly consider the exhibits attached to the Government's Complaint to Revoke Naturalization. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

15") asked whether Defendant had "**EVER** committed a crime or offense for which you were NOT arrested[;]" Defendant checked the box labeled "No." [ECF No. 1 at 3]. Defendant signed the Naturalization Application under penalty of perjury and certified that his answers were true and correct.

The Government interviewed Defendant twice regarding his Naturalization Application. On February 12, 2003, the United States Immigration and Naturalization Service (the "INS") interviewed Defendant under oath to determine his eligibility for naturalization. During the interview, an INS Officer asked Defendant Question 15; Defendant responded, affirming his written answer to Question 15 and again signed the Naturalization Application, certifying under penalty of perjury that his answers were true and correct. On July 25, 2008, United States Citizenship and Immigration Services (the "USCIS") interviewed Defendant under oath to determine his eligibility for naturalization. During the interview, an USCIS Officer asked Defendant Question 15; Defendant again responded, affirming his written answer to Question 15.

On September 23, 2008, USCIS denied Defendant's Naturalization Application for failure to provide complete criminal records. Consequently, on October 22, 2008, Defendant filed a Request for a Hearing on Decision in Naturalization Proceedings (the "Hearing Request"), Form N-336. On March 25, 2009, USCIS interviewed Defendant under oath regarding his Hearing Request. During the interview, Defendant, in response to an USCIS Officer's question, "affirmed that he had not committed any crimes or offenses for which he had not been arrested." *Id.* at 4. On March 30, 2009, USCIS approved Defendant's Naturalization Application. On April 29, 2009, Defendant took the oath of allegiance and was granted United States citizenship. Prior to being administered the oath of allegiance, Defendant completed and signed a Notice of Naturalization Oath Ceremony, Form N-445, and certified that his answers were true and correct, including that

he had not "knowingly committed any crime or offense, for which [he had] not been arrested[.]" *Id.* at 5.

On September 29, 2011, Defendant and his co-conspirators were charged with health care fraud. The grand jury returned a second superseding indictment on July 26, 2012, charging Defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count 1); health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2–6); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 7); and conspiracy to defraud the United States and pay health care kickbacks, in violation of 18 U.S.C. § 371 (Count 8). On August 30, 2012, Defendant pled guilty to Counts 1 and 7 and admitted that between 2004 and August 2008, he owned three pharmacies that submitted false and/or fraudulent Medicare claims and laundered the proceeds of the Medicare fraud. On December 21, 2012, Defendant was sentenced to concurrent sentences of 120 months' imprisonment as to Count 1 and 135 months' imprisonment as to Count 7, and the court imposed restitution of $15,401,499.

**II.    Procedural History**

On February 9, 2021, the Government filed a Complaint to Revoke Naturalization (the "Complaint") bringing four counts against Defendant: (1) illegal procurement of naturalization based on a lack of good moral character for a crime involving moral turpitude (Count I); (2) illegal procurement of naturalization based on a lack of good moral character for unlawful acts (Count II); (3) illegal procurement of naturalization based on a lack of good moral character for false testimony (Count III); and (4) procurement of United States citizenship by concealment of a material fact or willful misrepresentation (Count IV). [ECF No. 1]. Specifically, the Government alleges because Defendant committed his crimes during the relevant statutory period and because he lied about those crimes throughout his naturalization process, he improperly obtained his

citizenship. *Id.* In response, Defendant filed the instant Motion arguing that the Court should dismiss (1) the Complaint because the statute of limitations has run; (2) Counts III and IV under the doctrine of laches; and (3) all Counts for failure to state a claim.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

In his Motion to Dismiss, Defendant alleges that the Government's denaturalization action should be dismissed because it is barred by either the statute of limitations or the doctrine of laches. Defendant also raises various arguments asserting that the Complaint fails to state a claim upon which relief may be granted. The Court considers each argument in turn.

## I.     The Five-Year Statute of Limitations Does Not Apply

Defendant argues that the five-year statute of limitations under 28 U.S.C. § 2462 applies to denaturalization actions and has run on the claims in this action. Specifically, Defendant argues that because denaturalization is, at least in part, a punitive action, the statute of limitations applies under the United States Supreme Court's decision in *Kokesh v. Securities and Exchange Commission*, 137 S. Ct. 1635, 1644–45 (2017) (applying the § 2462 statute of limitations to a Securities and Exchange Commission claim for disgorgement because such relief is punitive, rather than remedial). However, as Defendant's counsel recently conceded in a similar denaturalization case against Defendant's spouse and co-conspirator, "no court yet has acknowledged that the *Kokesh* decision by the Supreme Court could apply to the denaturalization context." *United States v. Lopez*, No. 21-CIV-20550, [ECF No. 24 at 9:1–4] (S.D. Fla. May 14, 2021) [hereinafter Transcript of Motion Hearing]; *see also Lopez*, [ECF No. 22] (S.D. Fla. May 14, 2021) (order denying the defendant's motion to dismiss for the reasons stated in the Transcript of Motion Hearing). Indeed, several courts since *Kokesh*—including this Court—have found that the statute of limitations under 28 U.S.C. § 2462 does not apply to denaturalization actions because denaturalization is not a penalty. *See, e.g.*, *United States v. Phattey*, 943 F.3d 1277, 1282–83 (9th Cir. 2019); *United States v. Borgono*, No. 18-CIV-21835, 2019 WL 1755709, at *4 (S.D. Fla. Apr. 19, 2019). Moreover, the Supreme Court has long held that civil denaturalization is not a penalty. *See Trop v. Dulles*, 356 U.S. 86, 98–99 (1958) ("Denaturalization is not imposed to penalize[.]"); *Johannessen v. United States*, 225 U.S. 227, 242 (1912) ("The act imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct.

It simply deprives him of his ill-gotten privileges."). Thus, the Court finds that the five-year statute of limitations is not applicable.[2]

## II.     Defendant's Doctrine of Laches Argument Lacks Merit

Defendant argues that Counts III and IV should be dismissed under the doctrine of laches. Specifically, Defendant argues that the nearly ten-year delay by the Government to bring this action prejudiced Defendant by hindering his ability to defend himself because the evidence regarding his naturalization interviews "unless it was recorded, is subject to the failings of human memory." [ECF No. 9 at 15]. The Government argues that (1) laches does not apply against the United States in a civil denaturalization action and (2) if it does apply, the defense fails on the merits. The Court need not decide whether the doctrine of laches is applicable to denaturalization cases because it finds that Defendant does not present evidence of prejudice.

*Costello v. United States* is instructive. There, the Supreme Court—without holding the doctrine of laches applicable to a denaturalization proceeding—found a lack of prejudice despite a 27-year delay by the United States. *Costello*, 365 U.S. 265, 282–84 (1961) (noting that factors inherent in a lapse of time, such as "the memory and life of witnesses, the muniments of evidence, and others means of proof" worked in favor of petitioner and any harm was to the government's case). In fact, the Supreme Court, this Court, and various circuits have allowed the government to maintain denaturalization proceedings well beyond the ten years at issue in this case. *See, e.g.*, *Kungys v. United States*, 485 U.S. 759, 764–65 (1988) (denaturalization proceedings allowed 34 years after naturalization); *United States v. Coloma*, 535 F. Supp. 3d 1279, 1284 n.2 (S.D. Fla.

---

[2] Defendant relies on Department of Justice press releases to bolster his argument that denaturalization is a penalty. However, as the Complaint does not refer to these publications, the Court will not consider the press releases on a motion to dismiss. *See Crowell v. Morgan Stanley Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000) ("In ruling on a motion to dismiss, the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading[.]") (citations omitted). *See also* Transcript of Motion Hearing at 26:1–16 (declining to consider Department of Justice press release statements regarding denaturalization as they are matters outside the pleading).

2021) (rejecting argument of laches and noting several denaturalization cases were initiated 12, 13, 20, 25, 27, 28, and 41 years after naturalization). *See also* Transcript of Motion Hearing at 29:4-15 (same).

### III. All Four Counts State Claims Upon Which Relief May Be Granted

#### A. The Complaint Adequately Alleges Dates of Defendant's Involvement in the Conspiracies

Defendant argues that the Complaint fails to state a claim because it does not adequately allege the dates of Defendant's involvement in the conspiracies. Specifically, Defendant claims that the dates in the Complaint are contradicted by the exhibit on which the Government relies—Defendant's factual proffer in the criminal case—because the exhibit omits the dates. The Court finds that the Complaint sufficiently alleges the dates of the conspiracies.

At the outset, the Complaint alleges that "[f]rom 2004 to 2008, Prat knowingly and willfully conspired to commit health care fraud . . . and conspired to commit money laundering[.]" [ECF No. 1 at 1]. It also states that "between 2004 and August 2008, Prat owned and controlled three pharmacies . . . caused the pharmacies to submit false and fraudulent claims to Medicare [and] laundered the proceeds of the Medicare fraud[.]" *Id.* at 6–7. It further states that Defendant committed his crimes during the relevant statutory period, which ran from April 29, 1997, until Defendant was naturalized as a United States citizen on April 29, 2009. *Id.* at 11–12, 14, & 16. The Complaint paints a clear picture: between 2004 and 2008, Defendant owned three pharmacies, used those pharmacies to submit false and/or fraudulent Medicare claims, and laundered those proceeds. The factual proffer supports these factual allegations. *See* Transcript of Motion Hearing at 7:2–3 ("The [factual proffer] doesn't contradict the allegations by having an omission of dates[.]").

#### B. Health Care Fraud is a Crime Involving Moral Turpitude

7

Defendant argues that a conviction for conspiracy to commit health care fraud does not categorically involve moral turpitude because the statute criminalizes some conduct which does not require specific intent. Specifically, Defendant contends that the 2010 amendment to 18 U.S.C. § 1347 "arguably lessens the mens rea" for health care fraud and the willfulness standard only requires "knowledge that the conduct is unlawful." [ECF No. 9 at 20]. The Court is not persuaded.

"A crime involving moral turpitude . . . generally requires conduct that is 'inherently base, vile, or depraved.'" *United States v. Campos*, No. 16-CIV-20777, 2016 WL 8678885, at *3 (S.D. Fla. Nov. 3, 2016) (citation omitted). And a finding of moral turpitude requires that (1) a reprehensible act be performed with (2) some form of scienter. *Id.* Indeed, any crime involving fraud involves moral turpitude. *See Jordan v. DeGeorge*, 341 U.S. 223, 232 (1951) ("[C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude."); *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) (per curiam) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude.") (citation omitted).

To determine whether a crime involves moral turpitude, the Court employs a categorical approach that considers only the fact of conviction and the statutory definition of the offense, not the specific conduct of the defendant. *Itani*, 298 F.3d at 1215–16. In doing so, the Court must determine "whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1241 (11th Cir. 2016) (citation omitted). When analyzing a conspiracy conviction, as here, the Court reviews the elements of the underlying substantive offense. *Eritsian v. U.S. Att'y Gen.*, 837 F. App'x 670, 680 (11th Cir. 2020).

The offense of health care fraud is defined as follows:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
>> (1) to defraud any health care benefit program; or
>>
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.
>
> (b) With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

18 U.S.C. § 1347. The plain language of the statute makes clear that health care fraud is a crime involving fraud. And such a crime "constitutes a crime of moral turpitude because it involves 'deceit' and 'runs contrary to accepted societal duties and involves dishonest or fraudulent activity.'" *United States v. Merino*, No. 20-CIV-24093, 2021 WL 4976248, at *3 (S.D. Fla. July 26, 2021) (evaluating health care fraud offense) (citation omitted), *report and recommendation adopted*, No. 20-CIV-24093, 2021 WL 4099055 (S.D. Fla. Sept. 9, 2021). Thus, health care fraud is a crime involving moral turpitude because it involves fraud and dishonesty.

Notwithstanding, the Court will briefly address Defendant's remaining arguments. Defendant cites 18 U.S.C. § 1347(b) for the proposition that the language clarified that specific intent is no longer required. However, read in conjunction with 18 U.S.C. § 1347(a), the statute still requires proof that a defendant acted with intent to defraud and the 2010 amendment only clarified that proof that a defendant was aware of the *statute* is not needed. *See United States v. Nora*, 988 F.3d 823, 830 n.3 (5th Cir. 2021) (noting that despite § 1347(b)'s language, a conviction

under (a) still required showing the defendant acted with the specific intent to do something the law forbids, albeit not the specific intent to violate § 1347); *United States v. Grow*, 977 F.3d 1310, 1322 (11th Cir. 2020) (per curiam) (noting that § 1347 requires fraud and an intent to defraud). Furthermore, Defendant's reading of the statute in support of his proposition that the "willfulness" standard does not require an intent to defraud is incorrect as it fails to recognize that the standard is "knowingly and willfully." 18 U.S.C. § 1347(a). *See also Grow*, 977 F.3d at 1322 (interpreting the health care fraud statute to require an intent to defraud).

### C.  Money Laundering is a Crime Involving Moral Turpitude

Defendant argues that money laundering in violation of 18 U.S.C. § 1956 is not a crime of moral turpitude because it does not require an intent to defraud and the statute's minimum culpable conduct—structuring financial transactions to avoid currency reporting—does not categorically involve moral turpitude. The Court disagrees.

Courts within the Eleventh Circuit have found money laundering under § 1956 to be a crime involving moral turpitude. *See, e.g.*, *United States v. Lopez*, No. 21-CIV-20550, 2021 WL 3552347, at *5 (S.D. Fla. Aug. 5, 2021) (finding conspiracy to commit money laundering is a crime involving moral turpitude); *United States v. Bogacki*, 925 F. Supp. 2d 1288, 1293 (M.D. Fla. 2012) ("Bogacki pleaded guilty to, and was convicted of, committing crimes involving fraud and dishonesty during the statutory period, namely . . . conspiracy to commit money laundering[.]"). Moreover, other courts have rejected the same argument Defendant makes analogizing money laundering under § 1956 to the regulatory crime of structuring financial transactions under 31 U.S.C. § 5324, which was found not to involve moral turpitude. *See, e.g.*, *Smalley v. Ashcroft*, 354 F.3d 332, 336–39 (5th Cir. 2003) (finding money laundering under § 1956 is a crime involving moral turpitude despite the statute punishing mere structuring because the defendant "provides no

10

similarly innocent explanation that might accompany the act of *intentionally* concealing the proceeds"). Defendant fails to recognize that a conviction under § 1956 requires knowledge that the funds involved in the transaction are derived from the proceeds of illegal activity.

### D. Counts III and IV Adequately Allege Oral Testimony

Defendant argues that Counts III and IV do not allege, as required, that he gave *oral* testimony under oath. However, Counts III and IV reference Defendant's testimony during various naturalization interviews.[3] And the factual background within the Complaint bolsters these allegations. For example, it alleges "ISO Rodneff asked [Defendant] Question 15 [and Defendant] responded that he had never committed any crime or offense for which he had not been arrested[.]" [ECF No. 1 at 4]. At this stage of the pleadings, the Court finds that the Complaint sufficiently alleges that Defendant's answers were given orally.

### E. "Good Moral Character," "Crime Involving Moral Turpitude," and "Unlawful Acts That Adversely Reflect" Are Not Unconstitutionally Vague

Defendant argues that the legal standards are void because of their vagueness. A statute violates the Due Process Clause of the Fifth Amendment if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (citation omitted). However, the Supreme Court held that the phrase "crime involving moral turpitude" was not unconstitutionally vague. *Jordan*, 341 U.S. at 232 ("[T]he decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude."). The Supreme Court found it significant that the phrase "has been part of the immigration laws for more than sixty years" and "has also been used for many years as a criterion in a variety of other

---

[3] Defendant points out that Count III references a February 12, 2008 interview that was not referenced in the preceding paragraphs. *See* [ECF No. 9 at 9]. The Government states that this was a scrivener's error. *See* [ECF No. 14 at 16].

statutes." *Id.* at 229–30. Moreover, "[n]o case has been decided holding that the phrase is vague, nor [is there] any trace of judicial expression which hints that the phrase is so meaningless as to be a deprivation of due process." *Id.* at 230.

Here, that same rationale is applicable. *See Villeda v. U.S. Atty. Gen.*, 532 F. App'x 897, 897 n.1 (11th Cir. 2013) (relying on *Jordan* in finding the argument that "crime involving moral turpitude" is void for vagueness lacks merit); *Merino*, 2021 WL 4976248, at *4 ("In general, crimes involving dishonesty, false statement, or fraud reflect adversely on moral character.") (quoting *United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018) (per curiam)); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005) (affirming district court's decision that the defendant committed unlawful acts precluding him from establishing good moral character because the applicable regulations are "entitled to deference" and "supported by case law"). *See also* Transcript of Motion Hearing at 28:20–25 & 29:1–3 (declining to dismiss denaturalization complaint on basis that legal standards were void for vagueness where underlying conduct was particularized and described with specificity). Thus, the Court finds that the phrases "crimes involving moral turpitude," "good moral character," and "unlawful acts that adversely reflect" are not void for vagueness.[4]

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Lazaro Prat's Motion to Dismiss Plaintiff's Complaint, [ECF No. 9], is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of January, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[4] In light of the Court's findings, it need not address the Government's other arguments regarding the applicability of the void for vagueness doctrine to this context.