UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20547-GAYLES

**UNITED STATES OF AMERICA,**

 Plaintiff,
v.

**LAZARO PRAT,**

 Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff United States of America's (the "Government") Motion for Judgment on the Pleadings (the "Motion") [ECF No. 33]. The Court has reviewed the Motion, the pleadings, the parties' briefs, and is otherwise fully advised. For the reasons that follow, the Motion is **GRANTED**.

## BACKGROUND[1]

This action concerns the revocation of Defendant Lazaro Prat's ("Prat") citizenship via denaturalization. In its Motion, the Government argues that "the indisputable facts established by the pleadings and through judicial notice mandate [Prat's] denaturalization under 8 U.S.C. § 1451(a)." [ECF No. 33 at 1]. In brief, the Government alleges that Prat lacked the "requisite good moral character for naturalization" because he committed—and was convicted of—two crimes of moral turpitude during the relevant statutory period. [ECF No. 33 at 8]. Prat does not deny that he committed the crimes. Rather, he argues that the Government has failed to meet its burden of

---

[1] The Court incorporates the factual background set forth in its Order denying Defendant's Motion to Dismiss. [ECF No. 29].

1

proving that he joined the conspiracy during the "good moral character period" or that his crimes categorically involve moral turpitude.

After the Motion was briefed, the Court requested that both parties submit supplemental briefs regarding the impact of the Eleventh Circuit's recent decision in *United States v. Lopez*, 75 F.4th 1337 (11th Cir. 2023) on the Government's Motion. In *Lopez*, the Eleventh Circuit reversed Chief United States District Judge Cecilia Altonaga's order granting the Government's motion for judgment on the pleadings regarding Prat's co-conspirator and wife. *Lopez,* 75 F.4th at 1345. The Eleventh Circuit held that conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), does not categorically involve moral turpitude. *Id.* Based on that decision, the Government withdrew the portion of its Motion seeking denaturalization based on Prat's conviction for conspiracy to commit money laundering. [ECF No. 47 at 1]. Therefore, the Government's Motion now solely seeks denaturalization based on Prat's conviction for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. On April 30, 2024, the Court held a hearing on the Motion and both sides presented their arguments.

## **LEGAL STANDARD**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citation omitted). The court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). If a material dispute of fact exists, "judgment on the

2

pleadings must be denied." *Id*. (citing *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)).

A court may "consider documents attached to a motion for judgment on the pleadings without converting it into one for summary judgment if the documents are (1) central to the plaintiffs claim and (2) their authenticity is not challenged." *Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013) (citing *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)). "In particular, the Court may 'take judicial notice of and consider documents which are public records.'" *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014) (quoting *Day*, 400 F.3d at 1275-76).

## **DISCUSSION**

To many, the right to citizenship in this country is dearly held as one of their life's greatest achievements. The law requires "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship," and failure to do so will "render[] the certificate of citizenship 'illegally procured.'" *United States v. Lopez,* 75 F.4th 1337, 1341 (11th Cir. 2023) (quoting *Fedorenko v. United States*, 449 U.S. 490, 517 (1981)). Because status as a U.S. citizen confers priceless benefits to naturalized individuals, it may only be revoked upon clear and convincing evidence that their citizenship was illegally obtained. *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). Though the Government bears a high burden of proof in making such a showing, once the Government succeeds in doing so, a court "is compelled to enter a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517. While a court has the power to revoke citizenship, it must not invoke such authority lightly. *Schneiderman*, 320 U.S. at 122,

In order to obtain denaturalization pursuant to 8 U.S.C. § 1101(f)(3), the Government must sufficiently prove that the naturalized individual (1) committed a crime categorically involving moral turpitude ("CCIMT"), (2) during the good moral character statutory period, and (3) was

convicted of that crime or admits to the criminal acts. *United States v. Coloma*, 535 F. Supp. 3d 1279, 1285–86 (S.D. Fla. 2021). Prat does not contest that he was previously convicted of, and pled guilty to, conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. Therefore, the Court need only determine whether that crime is a CCIMT and whether Prat's criminal acts occurred within the statutory period.

      I.      <u>Healthcare Fraud is a Crime of Moral Turpitude</u>

"Federal law requires that an applicant for naturalization be 'a person of good moral character' from five years before filing h[is] application up to the time []he is granted citizenship." *Lopez*, 75 F.4th at 1341 (quoting 8 U.S.C. § 1427(a)). A person lacks good moral character during the relevant period if he committed a crime involving moral turpitude within that time. *Id.* (citing 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I)). "To determine whether a[] . . . prior conviction qualifies as . . . a crime involving moral turpitude, we apply the categorical approach." *Id.* (quoting *George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1303 (11th Cir. 2020). To determine whether a crime necessarily involves moral turpitude, a court is to examine "the elements of the offense" and not the naturalized citizen's "actual conduct." *Id.*

Under the categorical approach, a court must first determine whether the statute the naturalized citizen was convicted of is indivisible, "that is, if it defines only one crime with a single set of elements." *Id.* (quoting *George*, 953 F.3d at 1303). If so, the court must determine "whether the least culpable conduct that the statute makes criminal qualifies as . . . a crime involving moral turpitude." *Id.* However, "if the statute has multiple, alternative elements, and so effectively creates several different crimes, [the court] appl[ies] the modified categorical approach." *Id.* With the modified categorical approach, a court may rely on *Shephard* documents[2] to determine which

---

[2] *Shephard* documents are "a limited class of documents including the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge." *Crews v. United States*, No. 5:10-CR-

4

crime under that statute the defendant was convicted. *Id.* The court must then venture to "identify the least culpable conduct encompassed by that crime" and whether the crime "could be committed in a matter that does not involve moral turpitude." *Id.* When dealing with a conspiracy crime, a court focuses on the underlying substantive offense's elements to determine whether it is divisible. *Id.* "Alternative sets of elements usually signal divisibility. But alternative sets of various factual means of committing a single element usually do not." *Id.* at 1343 (citation and internal quotation marks omitted).

The Parties agree that the underlying crime for Prat's conviction for conspiracy to commit health care fraud under 18 U.S.C. § 1349 is health care fraud under 18 U.S.C. § 1347. [ECF No. 46 at 4; ECF No. 47 at 3]. However, the Parties disagree whether the subsections of § 1347 are divisible. Section 1347 defines the crime of health care fraud as follows:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>  (1) to defraud any health care benefit program; or
>  (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.

In denying Defendant's Motion to Dismiss, this Court previously applied the categorical approach and found that health care fraud under § 1347 is a CCIMT. [ECF No. 29]. This was consistent with other decisions rendered by this Court. *See United States v. Merino*, No. 20-CIV-

---

27, 2018 WL 664825, at *3 (S.D. Ga. Feb. 1, 2018) (citing *Shephard v. United States*, 544 U.S. 13, 16 (2005)), *report and recommendation adopted*, No. 5:10-CR-27, 2018 WL 2175880 (S.D. Ga. May 11, 2018).

24093, 2021 WL 4976248, at *3 (S.D. Fla. July 26, 2021) (finding conspiracy to commit health care fraud and wire fraud constitutes a CCIMT because it involves deceit and runs contrary to accepted societal duties and involves dishonest or fraudulent activity), *report and recommendation adopted*, No. 20-CIV-24093, 2021 WL 4099055 (S.D. Fla. Sept. 9, 2021). The Eleventh Circuit's decision in *Lopez* regarding the crime of money laundering has not disturbed this Court's prior determinations regarding healthcare fraud. Nonetheless, the Eleventh Circuit's divisibility analysis in *Lopez* is instructive here. There, the court found that the money laundering statute, 18 U.S.C. § 1956(a)(1)(B), was indivisible. The Eleventh Circuit reasoned that although § 1956(a)(1)(B) has two subsections, 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii), they simply provided different means of committing the same offense. *Lopez,* 75 F.4th at 1344. For support, the court noted that a conviction under either subsection (1) required proof of the same *mens rea*, and (2) carried the same penalty. *Id.* The same is true here. Both § 1347(a)(1) and § 1347(a)(2) require proof of the same *mens rea* ("knowingly and willfully"), and both provide the same penalties for varying resulting injuries. Therefore, § 1347 is also indivisible because

> [t]he difference lies only in what facts the defendant knew about the nature and purpose of the [scheme or artifice] at issue. Knowledge of the improper purpose is the means by which the [scheme or artifice] is rendered illicit. Even when [the scheme or artifice] has both prohibited purposes, it constitutes a single crime so long as the defendant knew of at least one of those illicit purposes.

*Id.*

Even if §§ 1347(a)(1) and (a)(2) provided "alternative elements" making the statute divisible, health care fraud still constitutes a CCIMT because both sets of elements ("to defraud" and "to obtain, by means of false or fraudulent pretenses, representations, or promises") concern fraud and dishonesty. *See United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018) ("In general, crimes involving dishonesty, false statement, or fraud reflect adversely on moral

6

character."); *Itani v. Ashcroft,* 298 F.3d 1213, 1215 (11th Cir. 2002) (per curiam) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude.") (citation omitted).

    II.    <u>Prat's Criminal Acts Fall Within the Relevant Statutory Period</u>

The Parties do not dispute that Prat was required to maintain good moral character from April 29, 1997, to April 29, 2009.[3] The Government primarily relies on the factual proffer attached as an exhibit to the Complaint ("Factual Proffer"), [ECF No. 1-9], and certified DMV records attached to their Motion ("DMV Records"), [ECF No. 33-1], as evidence that Prat participated in a conspiracy to commit health care fraud during the relevant statutory period. Prat does not dispute the propriety of considering the Factual Proffer and only takes issue with the DMV Records insofar as they are not *Shephard* documents.

The Court rejects Prat's argument that the categorical approach applies to the Court's determination as to when the relevant crime took place. The categorical approach only limits a Court to *Shepherd* documents when considering whether an underlying crime is one involving moral turpitude. The Eleventh Circuit has previously relied on non-*Shephard* documents when determining whether criminal acts occurred within the good moral character time period. *See Dor,* 729 F. App'x at 798 ("the unrebutted declarations submitted by the government, combined with other evidence it submitted, convincingly establish that [the defendant] . . . committed the unlawful acts during the statutory period.").

---

[3] "The statutory period includes 'the five years immediately preceding the date of filing his application' and the period from 'the date of the application up to the time of admission to citizenship.'" *Dor*, 729 F. App'x at 797 (quoting 8 U.S.C. § 1427(a)). Prat applied for naturalization on or about April 29, 2002, and became a naturalized U.S. citizen on April 29, 2009. [ECF No. 1 ¶¶ 8, 30]; [ECF No. 32 ¶¶ 8, 30]. Therefore, Prat was required to establish good moral character "from April 29, 1997—five years before he filed his naturalization application—through April 29, 2009—the date on which he was naturalized." [ECF No. 29 at 11].

To support his argument, Prat relies on *United States v. Dudley*, 5 F.4th 1249, 1259 (11th Cir. 2021) for the proposition that a court may only consider *Shephard* documents when determining whether a CCIMT occurred within the relevant good moral character time period. However, the holding in *Dudley* is inapplicable here. In *Dudley,* the Eleventh Circuit held that a judge in a criminal case was limited to *Shephard*-approved documents when determining "whether a defendant's prior convictions were committed on different occasions from one another" for the purposes of a sentencing enhancement under the Armed Career Criminal Act. *Id*. That same concern is not present here. As this Court and others have previously held, denaturalization is not a criminal penalty. *United States v. Borgono*, No. 18-CIV-21835, 2019 WL 1755709, at *4 (S.D. Fla. Apr. 19, 2019); *see also Trop v. Dulles,* 356 U.S. 86, 98–99 (1958) ("Denaturalization is not imposed to penalize[.]"); *Johannessen v. United States,* 225 U.S. 227, 242 (1912) ("The act imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges."). Thus, the Court can consider Prat's DMV Records.[4]

The Complaint alleges that "Prat used the proceeds of the fraud to purchase and maintain real property, vehicles, and other personal expenditures." [ECF No. 1 ¶ 36]. Additionally, the Factual Proffer attached to the Complaint states that Prat "utilized funds obtained through the fraudulent scheme to purchase, maintain and/or improve . . . "one (1) 2006 Mercedes-Benz, VIN WDBNG70J26A468364." [ECF No. 1-9 at 4]. The DMV Records show that Prat's wife registered that Mercedes-Benz under her name on January 24, 2006. [ECF No. 33-1 at 5]. Therefore, the DMV Records, in conjunction with the Factual Proffer, establish that Prat was committing health

---

[4] Additionally, the DMV Records are public records and are central to claims raised in the Government's Complaint. Therefore, the Court may properly take judicial notice of the documents without converting the Motion into one for summary judgment. *See Ramey v. Interstate Fire & Cas. Co*., 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013).

care fraud as early as 2006 because he used proceeds of the fraud to purchase the 2006 Mercedes-Benz that was registered on January 24, 2006. Moreover, Prat "provides no reasonable, or even plausible, factual alternative suggesting that the act may have been committed outside the relevant statutory period." *United States v. Salama,* 891 F. Supp. 2d 1132, 1141 (E.D. Cal.), *amended*, 890 F. Supp. 2d 1253 (E.D. Cal. 2012). The Court agrees with the Government and finds that the Factual Proffer and the DMV Records provide clear and convincing evidence that Prat participated in a conspiracy to commit health care fraud during the relevant statutory period. *Id.* ("What Defendant fails to acknowledge is that the exhibits, when viewed collectively, show that the crime was committed during the statutory period.").

Even if the Court's timing determination were limited to *Shephard* documents, they alone are sufficient to establish that Prat committed health care fraud within the relevant statutory period. *See Merino*, 2021 WL 4976248, at *4. Prat's sole argument to the contrary is that such a finding impermissibly requires the stitching together of various sentences in the Factual Proffer "to change their meaning." [ECF No. 37 at 13]. He is mistaken. A plain reading of the Factual Proffer shows that Prat participated in unlawful acts during the relevant time period. Although the Court must construe facts in favor of the defendant, Prat's construction of the Factual Proffer would require the Court to twist the sentences beyond their plain meaning.

The Factual Proffer makes clear that "[a]t various times" during "2004 through August 2008, defendant owned and controlled three pharmacies" including Medline Pharmacy Corp. [ECF No. 1-9 at 1]. The Factual Proffer confirms "**Defendant**, acting with the knowing assistance of other persons, willfully **utilized these pharmacies** to submit and cause the submission of false and fraudulent claims to Medicare thereby causing Medicare losses in excess of $7,000,000." *Id.*

(emphasis added).[5] This alone is sufficient to convincingly establish Prat's unlawful acts within the relevant time period (between April 29, 1997 and April 29, 2009). Additional *Shephard* documents attached to the Complaint further confirm this finding. In the Second Superseding Indictment, Prat was charged with committing health care fraud from "on or about July 16, 2002, and continuing through on or about August 8, 2008," [ECF No. 1-7 at 6], to which he pleaded guilty as charged. [ECF No. 1-8 ¶ 1]. The Court's December 21, 2012 Amended Judgment states that the conspiracy to commit health care fraud ended on August 8, 2008. [ECF No. 1-11 at 1].

The *Shephard* documents attached to the Complaint show "by clear, unequivocal, and convincing evidence" that Prat participated in the conspiracy to commit health care fraud during the relevant statutory period and, therefore, could not establish the necessary good moral character to be naturalized as a U.S. citizen. *See Coloma*, 535 F. Supp. 3d at 1286 (finding indictment, verdict, judgment, and defendant's admissions as sufficient to "show [d]efendant committed unlawful acts that adversely reflect upon his moral character during the statutory period."); *United States v. Garcia*, No. 14-CV-22397-KMM, 2015 WL 12533126, at *5 (S.D. Fla. Sept. 18, 2015) (finding indictment, judgement, and testimony during plea hearing provided "indisputable facts" showing defendant participated in conspiracy during the relevant time period); *United States v. Gkanios,* No. 12-60423-CIV, 2012 WL 5986625, at *5-6 (S.D. Fla. Nov. 29, 2012) (finding prior convictions provided "clear, convincing, and unequivocal evidence" that unlawful acts were committed within the statutory time period), *aff'd*, 536 F. App'x 854 (11th Cir. 2013); *see also United States v. Whittingham*, No. 16-CV-03482-FB, 2022 WL 2291967, at *2 (E.D.N.Y. June 24, 2022) (finding same); *United States v. Mejia*, No. 316CV00509BENWVG, 2017 WL 87070, at *3

---

[5] The Factual Proffer also shows that Prat "utilized Medline Pharmacy to cause the submission of false and fraudulent claims to Medicare", that Prat knew that an "excess of $7,000,000" in Medicare reimbursement funds were fraudulently obtained from "claims to Medicare on behalf of Medline", and that these claims were submitted around "February 8, 2005, through July 29, 2009." [ECF No. 1-9 at 2].

(S.D. Cal. Jan. 10, 2017) (finding same); *United States v. Gayle*, 996 F. Supp. 2d 42, 51-53 (D. Conn. 2014) (finding same). In so finding, the Court "*must*" revoke Prat's citizenship. *Jean-Baptiste*, 395 F.3d at 1192 (emphasis in original). The Government is entitled to judgment on Count I.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Judgment on the Pleadings is **GRANTED**. Final judgment will be issued separately. The Clerk of Court is directed to **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of May, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record